UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI
CIVIL CASE NO: 09-773-JGW

**STAN DAVIS**                                                                                               **PLAINTIFF**

**V.**

**INEOS ABS (USA) CORP.**                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Pending is defendant's motion for summary judgment. Doc. 30. For the following reasons, the motion will be granted.[1]

**I. Factual and Procedural Background**

Plaintiff was employed as a lab technician for over thirty years by defendant and defendant's predecessors. Defendant terminated plaintiff in April 2008. Defendant contends plaintiff was terminated for sending and/or receiving pornographic or sexually-oriented emails on defendant's computer system; plaintiff contends he was terminated because of his age (52 at the beginning of this action).

Plaintiff filed an action in state court for wrongful discharge, age discrimination, breach of implied contract, and intentional infliction of emotional distress. Doc. 1-2. Defendant removed the case to this Court on diversity grounds. Doc. 1. In September 2010, then-Magistrate Judge Hogan dismissed plaintiff's wrongful discharge and intentional infliction of emotional distress claims. Doc. 20. In November 2010, the case was reassigned to me.

---

[1] The parties have consented to disposition of all proceedings, including trial, before a magistrate judge. See 28 U.S.C. §636(c).

Defendant moved for summary judgment in January 2011.

    II. Analysis

    A. Standard of Review

Plaintiff recites Ohio's summary judgment standard.  But "[f]or the purposes of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Ohio, and must therefore apply the substantive law of that state." *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999).  Since summary judgment is a "procedural device for deciding a case without the necessity of a full-blown trial[,]" a court must analyze a summary judgment motion in a diversity action under the terms of Federal Rule of Civil Procedure 56.  *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986).  The fact that a state court may have a different summary judgment procedure is "immaterial." *Id.*

Summary judgment is proper only if the facts on file with the court demonstrate that no genuine issue of material fact remains to be resolved and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain for the finder of fact at trial.  *See id.* at 324.  Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court's function is not to weigh the evidence and determine the truth of the matters

asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Id.* at 249. The inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

    **B. Age Discrimination Claim**

Plaintiff does not raise a federal cause of action for age discrimination, but age discrimination claims under Ohio law use "[t]he same evidentiary framework" as discrimination claims brought under the Age Discrimination in Employment Act (ADEA). *Siemer v. Comet North America*, 467 F.Supp.2d 781, 787 (S.D. Ohio 2006). "In order to establish a claim of age discrimination, Plaintiff may either introduce direct evidence of discrimination or prove circumstantial evidence that would support an inference of discrimination."[2] *Id.*

In order to prevail on an indirect claim of age discrimination, a plaintiff must first

---

[2] Ohio state courts use a "slightly different definition" of what constitutes direct evidence. *Id.* Even under Ohio state law, however, "the plaintiff still bears the burden of persuasion that age was the cause of the adverse employment action." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 370 (6th Cir. 1998).
Plaintiff relies upon the indirect (i.e., circumstantial) method of proof. Thus, the difference between federal courts' definition of direct evidence and Ohio state courts' definition of direct evidence is not crucial, especially since plaintiff has not presented a *prima facie* case of discrimination.

establish a *prima facie* case of discrimination. *Siemer*, 467 F.Supp.2d at 788. In order to make out a *prima facie* case of age discrimination under Ohio law, a plaintiff must show that he: "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell v. Bank One Trust Co., N.A.*, 803 N.E.2d 781, 787 (Ohio 2004). At all times, however, a plaintiff bears the burden of persuasion to show that age was the but-for cause of the adverse employment action. *Gross v. FBL Financial Services, Inc.*, ___ U.S. ___, 129 S.Ct. 2343, 2352 (2009).[3]

Defendant does not contest plaintiff's ability to satisfy the first three factors. *See* Doc. 30, p. 8 ("INEOS assumes that Davis can satisfy the first three elements of the *prima facie* case."). The question becomes, therefore, whether plaintiff has shown that he was replaced by someone not belonging to the protected class (i.e., a substantially younger person).[4] Plaintiff alternatively may satisfy the fourth factor by showing that he was treated less favorably than similarly situated individuals. *See, e.g., Chamberlain v. Consolidated Learning Centers, Inc.*, 2010 WL 5677050, at *5 (S.D. Ohio Dec. 2, 2010).

Defendant contends that plaintiff's age played no role in his termination. That contention is buttressed by the affidavit of Brian Bennett, human resources manager for the plant at which

---

[3]Though *Gross* interpreted the ADEA, plaintiff did not take issue in his response with defendant's reliance upon *Gross*. And, in any event, Ohio law similarly provides that "the plaintiff at all times bears the burden of proof." *Miller v. Potash Corp. of Saskatchewan, Inc.*, 2010 WL 3529248, at * 5 (Ohio Ct.App. Sept. 13, 2010).

[4]The Court rejects plaintiff's argument that defendant has waived this issue. Page seven of defendant's memorandum of law in support of its motion for summary judgment expressly argues that plaintiff "cannot satisfy the fourth element because he has no evidence that he was replaced by a significantly younger employee."

plaintiff formerly worked. Bennett avers in his affidavit that plaintiff's age "played no role in the decision to discharge him." Doc. 39-2, p. 3. Bennett also avers in his affidavit that plaintiff was not a union member and that many union members were terminated for inappropriate usage of defendant's email system, but some union members' termination were rescinded after the union objected to their discharge. *Id.* However, defendant refused to reinstate six union members who were younger than plaintiff and did reinstate nine union members who were older than plaintiff.

Taken as a whole, therefore, Bennett's affidavit shows that: 1) many of defendant's employees were discharged for inappropriate email usage; 2) some employees were reinstated after the union objected to their discharge; 3) some union members older than plaintiff were reinstated while some union members younger than plaintiff were not reinstated and 4) plaintiff's age played no role in defendant's decision to discharge him.

Plaintiff relies in response upon a spreadsheet attached as Exhibit A to his response to defendant's motion for summary judgment. Plaintiff contends that Exhibit A shows that twenty-one of the twenty-seven people terminated for sending/receiving improper emails were over the age of forty. *See* Doc. 30-1. Exhibit A is a ten page chart with columns showing the names of dozens of people (presumably employees of defendant), whether those people were members of a union, whether they were disciplined, why they were or were not disciplined, their current employment status, their reason for reinstatement (if applicable), and their dates of birth. As defendant notes in its reply, however, Exhibit A may not properly be considered in ruling on the motion for summary judgment.

"Summary judgment is appropriate where the nonmoving party fails to present admissible evidence to defeat the summary judgment motion." *Tenneco Automotive Operating Co., Inc. v.*

5

*Kingdom Auto Parts*, ___ Fed Appx. ___, 2010 WL 4365580, at *6 (6th Cir. Oct. 28, 2010). *See also Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing with approval the statement in *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). Exhibit A contains nothing to indicate from where or from whom the information contained in it was obtained.

There is no indication by plaintiff that Exhibit A is also an exhibit to a deposition, affidavit or similar sworn document. Thus, Exhibit A is by an unknown author and contains unverified information of unknown reliability. Because Exhibit A lacks any indicia of reliability, the Court declines to consider it in resolving the pending motion for summary judgment.[5]

Plaintiff is unable to point to any specific evidence to make a *prima facie* showing that he was replaced by a substantially younger worker. Indeed, it is unclear who, if anyone, replaced plaintiff. Instead, plaintiff attempts to show that he was treated less favorably than similarly situated individuals. A plaintiff seeking to show that he "was treated less favorably than a similarly-situated individual . . . must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself." *Chamberlain*, 2010 WL 5677050, at *6.

Toward that end, plaintiff argues that some employees who were members of unions were reinstated after being discharged for inappropriate email usage. However, no discriminatory intent may be inferred from defendant's decision to treat differently union members and non-

---

[5]Plaintiff has attached other documents to his response to defendant's motion for summary judgment which are similarly inadmissible. But those documents do not factor in the Court's decision and need not be discussed at length.

union members.[6] Although it involved a claim of racial discrimination instead of age discrimination, the Court agrees with the logic expressed by the Middle District of Georgia:

> it is uncontested that the other employees caught sleeping on the job were union members covered by a collective bargaining agreement while the plaintiffs had no such protection. The law is unequivocal that in a Title VII race discrimination claim, "[f]irst and foremost, because of their unique status in the workplace, bargaining unit employees are *never* similarly situated with non-bargaining unit employees." *Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1170 (11th Cir.1988), cert. denied, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988) (emphasis in original).
> 
> The reason for the distinction is clear. An employer must often go through a complex process in order to discipline an employee covered by a collective bargaining agreement which frequently involves grievance and appeal procedures. *See, Marshall*, 838 F.2d at 1170-71. At-will employees, by contrast, may be disciplined or discharged for virtually any reason, subject to a few exceptions such as discrimination. Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. Because of this fundamental difference, employees in these two groups are never similarly situated and cannot be compared in Title VII lawsuits to show discrimination. The only employees with whom the plaintiffs could compare themselves would be others not protected by the collective bargaining agreement, but there has been no evidence of this nature.

*McKie v. Miller Brewing Co.*, 1992 WL 150160, at *4 (M.D. Ga. March 6, 1992) (internal quotation marks and citations omitted).[7]

Likewise, plaintiff's argument that he was treated less favorably than some supervisors,

---

[6]Plaintiff contends he was the only non-union employee terminated, but he only cites the inadmissible Exhibit A to support that contention. *See* Doc. 39, p. 6.

[7]*Accord Milloy v. WBBM-TV, Chicago*, 613 F.Supp.2d 1035, 1037 (N.D. Ill. 2009) (holding that, among other things, the difference between being a union member and a non-union member has "consistently been held to negate the 'similarly situated' test applicable to the essential fourth element of a prima facie case . . . ."); *Johnson v. Pepsi Cola General Bottlers, Inc.*, 2005 WL 1629895, at * 7 (E.D.Wis. July 6, 2005) ("Where one employee is a union member, and the other is not, the two employees are not similarly situated for the purposes of satisfying the fourth element of a plaintiff's prima facie case."); *Gaddy v. Philadelphia Housing Authority*, 2008 WL 2928485, at *6 (E.D.Pa. July 28, 2008) ("Smith is not a similarly situated individual because, unlike Gaddy, he is a union member.").

including Robert Shinn, is inapposite because plaintiff is not similarly situated to supervisory employees. *See, e.g., Koski v. Willowwood Care Ctr. of Brunswick, Inc.*, 814 N.E.2d 1235, 1238 (Ohio Ct.App. 2004) (supervisor and nonsupervisors not similarly situated in claim of racial discrimination); *Quinn-Hunt v. Bennett Enterprises, Inc.*, 2005 WL 2174053, at *3 (N.D. Ohio 2005) ("Supervisory and non-supervisory employees are not similarly situated, and an employer may therefore justifiably treat such employees differently."). And plaintiff's argument that he was not treated similarly to Mike Precht, a non-union, non-supervisory employee who allegedly sent pornographic emails but was not discharged, is insufficient to support a *prima facie* case of age discrimination because Precht was older than plaintiff.[8]

Finally, plaintiff's attempt to use Greg Westrich as a comparator fails because Westrich was only slightly more than three years younger than plaintiff.[9] The Court concludes that a three-year age difference, standing alone, is insufficient under these facts to show that Westrich was "substantially younger" than plaintiff. *See, e.g., Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) ("in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not

---

[8] Exhibit A lists Precht as having been born in 1949 and plaintiff as having been born in 1956. As stated previously, that exhibit is improper. The Court discusses the exhibit only to point out that defendant would be entitled to summary judgment even if Exhibit A had been considered.

[9] Westrich's age is gleaned from Exhibit A. Again, the Court discusses Exhibit A only to highlight that defendant would be entitled to summary judgment even if that exhibit were considered.

Defendant also argues that Westrich is not similarly situated to plaintiff because Westrich did not send sexually explicit videos on the company's email system. The Court must construe the record in the light most favorable to plaintiff at this stage of the proceedings. But the Court need not resolve this dispute because Westrich is not substantially younger than plaintiff.

8

significant."); *Coryell*, 803 N.E.2d at 787-88 (court has "significant discretion" to determine on a case-by-case basis whether a comparator employee is "substantially younger").

Because plaintiff has not made a *prima facie* case, the Court need not discuss whether defendant's stated reasons for terminating him are pretextual or whether the record supports a finding that plaintiff's age was the but-for cause of his termination.

### C. Implied Contract

Plaintiff was an at-will employee. However, he alleges in his complaint that he and defendant "entered into an implied contract of progressive disciplinary action as evidence [sic] in the employee handbook" and that defendant breached that implied contract by "fail[ing] to abide by its own policy of progressive discipline . . . ." Doc 1-2, p. 4. Defendant denies having formed an implied employment contract with plaintiff.

Under Ohio law, "[i]n general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.*, 653 N.E.2d 381, 384 (Ohio 1995). An exception to the employment at will doctrine exists, however if there are "implied or express contractual provisions which alter the terms of discharge . . . ." *Id.*

In order to determine if an implied contract exists, a court may consider the course of dealing between the employee and the employer, employee handbooks, and oral and written representations made by the employer. *Id.* However, in order to overcome "the presumption of an at-will relationship" the record must contain "specific evidence to show that the parties mutually assented to something other than at-will employment." *Reasoner v. Bill Woeste*

*Chevrolet, Inc.*, 730 N.E.2d 992, 995 (Ohio Ct.App. 1999). An employee handbook, standing alone, is not an employment contract. *Senter v. Hillside Acres Nursing Center of Willard, Inc.*, 335 F.Supp.2d 836, 843 (N.D. Ohio 2004) (quoting *Wright*, 653 N.E.2d at 384). An employee handbook may provide the terms and conditions of an at-will employment relationship only if both the employer and employee intend to be bound by its provisions. *Id.*

A party claiming the existence of an implied contract bears a "heavy burden . . . to demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration, and mutual assent." *Fennessey v. Mt. Carmel Health Sys., Inc.*, 2009 WL 2331868, at *5 (Ohio Ct.App. July 30, 2009). Thus, "the employee's belief that the handbook affords him contractual rights does not mean that it does unless the employer intends it to do so." *Id.*

No party has pointed to where an employee handbook used by defendant may be located in the record, and defendant denies that such a handbook exists. Plaintiff instead relies upon work rules promulgated by a predecessor in interest to defendant which defendant allegedly adopted. Doc. 43-3-2 (Davis depo, Exh. 2). Defendant argues that it did not adopt those work rules and that much of plaintiff's argument relies upon materials not properly admissible in evidence. The Court need not resolve that dispute, however, because even assuming, solely for purposes of argument, that defendant did adopt the work rules, plaintiff's claim must fail.

Page one of the work rules relied upon by plaintiff provides in relevant part that:

no set of regulations or rules can contain a complete outline of all acceptable
industrial behaviors. There may be occasions when an employee will subject
himself or herself to discipline by behavior other than that outlined by formal
plant rules. Such behavior is conduct recognized to be inconsistent with the good
order, performance or the legitimate objectives of the company. . . . The type and

>degree of disciplinary action taken will depend on the nature of the infraction and the circumstances surrounding it.

Doc. 43-3-2, p. 1.  Later, those work rules classify improper behavior into three broad sections.  Among the conduct constituting the third section is "**COMPANY COMMUNICATION SYSTEMS ARE PROVIDED FOR BUSINESS PURPOSES ONLY.**  Abuses of these systems are prohibited.  Examples include . . . e-mail and/or internet access." *Id.* at p. 9 (emphasis in original).  The next exhibit to plaintiff's deposition is a 2002 email from Robert Shinn, product manager for defendant, to various employees of one of defendant's predecessors in interest.  That email states in relevant part that "[a] violation of a Section III work rule can expect to receive discipline of increasing severity with each violation, up to and including discharge.  *Depending on the circumstances*, *more severe discipline could result on the first offense*."  Doc. 43-3-3, p. 1 (emphasis added).

>Under Ohio law:
>
>Where a disciplinary policy is not stated in absolute terms, but is qualified by noting that, depending on the seriousness of the offense, any or all of the steps preliminary to discharge may be skipped, the disciplinary procedure is not mandatory; rather, the employer is merely publishing the possible penalties that may be taken for violating company policies, while maintaining discretion as to which penalty will be used.  Under such circumstances, the employee remains an at-will employee who could be terminated at any time.

*Fennessey*, 2009 WL 2331868, at * 6.  Thus, plaintiff's argument that defendant's progressive discipline policy created an implied contract which defendant breached by failing to impose progressive discipline upon plaintiff must fail.

This conclusion is reinforced by the fact that plaintiff testified at his deposition that he had never seen the work rules prior to that deposition and was, until that time, unaware of their

11

existence.  Doc. 43, p. 26-27.[10]  A document about which one party is completely ignorant cannot be the foundation of a mutually binding contract.  In other words, there clearly was not a meeting of the minds with respect to the work rules in question.

The lack of an implied contract means that plaintiff was an at-will employee "subject to discharge by an employer at any time, even without cause." *Wright*, 653 N.E.2d at 384.  The Court has already determined that plaintiff has not established a prima facie case of discrimination.  Thus, there was no legal impediment to defendant choosing to terminate plaintiff's employment, instead of imposing a lesser punishment, based upon plaintiff using

---

[10]In relevant part, pages 26-27 of plaintiff's deposition provide as follows:
Q. Okay. All right. So let me make sure I've got this right, then.
 The rules that I showed you in Exhibit 2, today is the first time you've ever seen those rules, correct?
A. Yeah.
Q. Okay. So as far as your employment with Bayer, Lanxess and INEOS would go, you were completely unaware of the existence of these rules throughout your employment, right?
A. Yes, sir.
Q. Okay. And then I'm going to ask a lot of questions that are going to be obvious, but --
 A. Okay.
Q. Did anyone from INEOS ever talk to you about these rules?
 A. No.
 Q. Did anyone from INEOS ever tell you that these rules were in effect after October 1, 2007?
 A. No, sir.
 Q. And did you believe that these rules were in effect when INEOS discharged you?
 A. No, sir.
 Q. And as far as you know, were these rules in effect when INEOS discharged you?
 A. No, sir.
 Q. While INEOS employed you, did you know what rules were in effect at the plant?
 A. No, sir.

defendant's email system to send/receive numerous sexually-oriented emails.[11]  *See, e.g., White v. Ohio State Univ.*, 129 Ohio Misc.2d 12, 23-24 815 N.E.2d 1160, 1170 (Ohio Ct. Cl. 2004) ("Absent a finding of illegal purpose or discriminatory intent, the general rule is that this court will not substitute its judgment for that of an employer and may not second-guess the business judgments of employers regarding personnel decisions.").  And since plaintiff was an at-will employee subject to termination at any time for any non-legally prohibited reason, it is irrelevant whether the emails in question were sent prior to the date defendant took control of the plant where plaintiff worked.

### III. Conclusion

For the foregoing reasons, it is **ORDERED**:

Defendant's motion for summary judgment [Doc. 30] is **granted** and this action shall be stricken from the active docket of this court.

This the 24th day of March, 2011.

s/J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

---

[11] With the exception of one email, plaintiff did not deny sending/receiving the emails in question. *See* Doc. 43 (Davis Dep.), p. 95-97, 105-132.